## UNITED STATES v. HOYT.

Fourth Division. Fairbanks. February 9, 1925.

No. 910–C.

**1. Criminal Law ⬡126(2)—Venue—Change of Place of Trial—Prejudice of Community.**

The defendant was indicted and brought to trial for robbing the post office. On the first trial the jury disagreed, and a second trial was set for the same place. He was a well-known resident of the place of trial, and highly connected in a business and social way. His case occasioned much interest publicly, and the persons who might be called as jurors were about equally divided in respect to his guilt or innocence. The local newspaper and the people generally discussed the facts, and disagreed in these discussions about the case. The government moved for a change of venue to another division of the court, because of this factional discussion and prejudicial division of the prospective jurors at the place of indictment. Both sides filed many affidavits in support of this contention. Some 80 or more affidavits were filed on behalf of the defendant, and an almost equal number for the prosecution. *Held*, there was such a factional and intense prejudice in the community, both for and against the defendant, that a fair trial could not be had, and a change of venue was granted.

**2. Criminal Law ⬡127—Sickness of Witness—Convenience of Witnesses.**

On motion of the United States for a change of the place of trial of a criminal case from Fairbanks to Juneau, Alaska, it appeared that the main witness for the prosecution was a resident of Los Angeles, Cal., was a married woman, and pregnant. She refused, under advice of her physician, to undertake the long journey from Los Angeles, Cal., to Fairbanks, Alaska, to attend the trial, because of the fear of injury or death to herself or to her unborn child; but she consented to go to Juneau, Alaska, several hundred miles nearer, and not subject to so many hardships and dangers as the longer trip. *Held*, sufficient ground for a change of the place of trial from Fairbanks to Juneau.

**3. Criminal Law ⬡304(1)—Judicial Notice of Public Prejudice of Community on Retrial of Important Criminal Case.**

Where an important criminal case has once been tried in the community where the crime is alleged to have occurred, and, on disagreement of the jury in the former trial, comes on again in the same community before the same trial judge, and where intense factional prejudices exist both for and against the defendant, and such prejudices are so widespread and bitter as to divide the prospective jurors on the subject of the guilt or inno-

⬡See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

cence of the defendant, and the local newspaper has been a leader in the discussion of these divisions, the trial judge may, on considering a motion of the government for a change of venue, take judicial notice of the general conditions of the public mind there, in considering the question of a change of venue.

4. **Criminal Law ⊜⟫100(2)—Courts—Jurisdiction of District Courts in Alaska.**

Section 363, Compiled Laws of Alaska 1913, creates a district court in Alaska, with general jurisdiction, and provides that "four district judges shall be appointed for the district [territory], * * * who shall * * * reside in the divisions of the district [territory] to which they may be respectively assigned by the President. The court shall consist of four divisions, which shall also be recording divisions." The territory is not subdivided into divisions. It is the court that consists of four divisions, which are also recording districts. There is only one district, so far as judicial procedure is concerned, in the territory of Alaska, although the court consists of four divisions.

5. **Jury ⊜⟫33(3)—Constitutional Law—Courts—Jurisdiction of District Courts of Alaska.**

Const. U. S. Amend. 6, provides that "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law," and this judicial district, which comprises all of the territory of Alaska, has been constituted and ascertained by law since the year 1884, and there has never been any other in Alaska. No constitutional right of the defendant can be violated by a change of venue from one division to another in Alaska.

6. **Criminal Law ⊜⟫117—Venue, Change of, on Application of Prosecution.**

Where, however, the Constitution contains no express provision as to the place of trial of an offender, the court may order a change of venue on application of the prosecution, where it appears that a fair trial cannot be had in the county (or division) where the accused is indicted.

Julien A. Hurley, U. S. Dist. Atty., and Fred D. Crane, U. S. Asst. Dist. Atty., both of Fairbanks.

T. A. Marquam, of Fairbanks, for defendant.

CLEGG, District Judge (orally). In this case a motion was argued last week for a change of venue at the instance of the government.

The motion is based upon two grounds: First, that a fair

and impartial trial cannot be had at Fairbanks, where the headquarters of the court are held; and, second, that a necessary witness on behalf of the government, who has been regularly subpœnaed, cannot attend the trial on account of her physical condition. This motion is supported by affidavits to the number of 45, or thereabouts.

The defendant has filed a protest against the granting of a change of venue, and objects thereto on constitutional grounds, and on the further ground that the court has no authority to transfer the case from this place to any other place in the territory of Alaska, and that it would work a prejudice against the defendant if the court did do so, and this resistance on the part of the defendant and his objections are supported by the affidavit of his attorney, by his own affidavit, and by the affidavits of 70 other people.

At the time set for the defendant to make a showing in resistance to the motion of the government, the government's attorneys made a supplemental showing, as they call it, which consists of certified copies of the newspaper articles published by the Fairbanks News-Miner, a local newspaper published at Fairbanks, Alaska, and the only newspaper published in the Fourth division at any near distance from the headquarters of the court, and also a countershowing consisting of a further publication made in the same newspaper since the filing of the government's motion for the change of venue.

When this was done, the defendant asked for further time to make any showing in reply, and it was granted. Defendant then filed 17 affidavits of other persons resident in the community in opposition to the supplemental showing and countershowing of the government.

The court has examined all the papers submitted here on behalf of both parties as carefully as he could and as cautiously as time has permitted, and has listened to the arguments of the attorneys on both sides; the argument of the defendant's attorney lasting about four hours, including citations of law.

It appears from the showing made by the government, and it is in no way denied, that showing being made by the affidavit of P. L. Neil, post office inspector, that after the witness Mrs. C. J. Diass, formerly Miss Lorene Mellon, had been subpœnaed by the government in this case, following the calling of the term of court here, to appear here on the first day of the term

on which the trial jury would be present, that he went to San Francisco for the purpose of interviewing the lady, in view of the fact that he had been informed that she refused to attend on account of her physical condition.

The affidavit recites that the witness claimed to him that she was in a pregnant condition, and that she had been advised by her physician it would be dangerous to herself, and perhaps to her life and the life of her prospective child, if she undertook the hardships of a trip to Alaska, particularly crossing the Gulf of Alaska and the hardships of the trip into the interior to Fairbanks. This witness, I believe the record shows, is at Los Angeles, in the state of California.

It is not denied by the defendant that the case of the government was to be presented at this term of court, at the first day of the term, but that by stipulation of counsel, both on the part of the government and the defendant, this case was postponed until the case of United States v. John L. White was tried and disposed of. The case, then, of United States v. Romeo Hoyt became the second case for trial on the calendar, instead of the first, as theretofore agreed, and the government has now in attendance three witnesses from the state of Washington, P. L. Neil, Joseph Knizek, and Lee Gordon, one witness from either San Francisco or Los Angeles, Frank P. Wood, and has another witness coming here from Indiana to attend the trial. The government is ready to proceed with the trial of the case, were it not for the fact that this witness, Mrs. Diass, formerly Lorene Mellon, is not here. All of the defendant's witnesses apparently, so far as the court knows, are here.

It is not denied by the defendant that the government has acted with due diligence in attempting to secure the attendance of the witness Mrs. Diass, formerly Lorene Mellon, or that they have been negligent in so procuring her attendance; nor is it denied that the testimony of this witness, which the court heard on the former trial, is competent and relevant and material to the trial of the case on the part of the government, and that she is one of the most important witnesses, if not the main witness, on the part of the government.

In that view of the case, the government contends that they cannot have a fair and impartial trial because of the absence of this material witness, through no fault of theirs, in spite of their exercise of due diligence, and, in addition to that fact,

that the people of the community here are so prejudiced either in behalf of the government or the defendant that neither the government nor the defendant can have a fair trial. The showing made by the defendant, in addition to the showing made by his attorney, by way of affidavit, does not touch the matters contended for by the government with respect to the affidavit of the defendant himself.

This motion being tendered to a court who had not had the experience of having lived, as the judge of this court has, in this community for the past 17 years, and who knows not only the defendant and the attorney for about that time, and nearly everybody who has testified either on behalf of the government or on behalf of the defendant in the respective showings of the parties on this motion, might well experience some difficulty—I say, if it were not for that experience, and for the experience that the court had in the previous trial, which lasted for about 20 days, and if the court had not seen with his own eyes the interest of the people of the community as they attended the trial in such crowds as could gain entrance into the courtroom, there would be perhaps some difficulty in the court deciding this motion honestly and fairly and legally. If the case were not the case that it is, a case where it is charged that larceny was committed in the United States post office at Fairbanks, and if it were not true that the defendant was a resident of the town of Fairbanks, and has been such resident, with his wife, for the greater part of that time, there would be some additional difficulty presented. But the court has the benefit of this knowledge, and the solution is by no means difficult, so far as the court views both the showings made and the law of the case as it stands upon the statutes.

The general effect of the affidavits presented on behalf of the government is to the effect that their respective affiants have lived in this community for a considerable period of time, that they have heard this case discussed numbers of times by great numbers of people, and that in such discussions the people whom they heard discussing it expressed opinions as to the guilt or innocence of the defendant, and upon this statement of fact the various and respective affiants allege that in their opinion a fair and impartial trial cannot be had in this division.

Twenty-two of these affiants say that a fair and impartial trial cannot be had at Fairbanks, or in the Fourth division; 15

of them say that a fair and impartial trial cannot be had at Fairbanks; 4 of them say that a fair and impartial trial cannot be had in the Fourth division; 4 of them say that a fair and impartial trial cannot be had at Fairbanks under the present system of drawing juries. Two of these 4 latter are attorneys who have been practicing in this court for a period of perhaps 20 years, and are attorneys of standing and reputation, one having formerly been the United States attorney of this division. The other is well known to the court and to everybody else, and is the regular attorney for the Northern Commercial Company of Alaska.

The defendant has made a showing which does not deny the fact that this case has been widely discussed, and that, as contended for by the government, a complete résumé of the evidence was published in the local paper; that the respective affiants on the part of the defendant, to the number of 70, generally admit that the case has been discussed in the community and elsewhere in the division and state that they believe a fair and impartial trial jury can be drawn in this community and surrounding country.

One of them, an attorney, Mr. Ryder, who has had very little experience as a practicing attorney, and who has only been admitted to the bar during the past 3 years, says that in his opinion a fair and impartial jury can be obtained in the Fourth division. Another attorney, Mr. Stevens, says that in his opinion he has no reason to believe that an impartial trial cannot be had in this vicinity.

The defendant asserts and contends, through his attorney, in argument, that the court has no authority to change the place of trial in any case at the request of the government, and only on the request of the defendant. The court does not agree with this view under the statute. He further contends that such a change would be in violation of his constitutional rights under the Sixth Amendment to the Constitution of the United States.

I may say here, without going into the history of the establishment of this court, that the last enactment, passed in 1909, which is found on page 251 of the Compiled Laws of Alaska (section 365), provides as follows:

"The jurisdiction of each division of the court shall extend over the district of Alaska, but the court in which the action is pending may, on motion, change the place of trial in any action, civil or crim-

inal, from one place to another place in the same division or to a designated place in another division in either of the following cases:

"First. When there is reason to believe that an impartial trial can not be had therein:

"Second. When the convenience of witnesses and the ends of justice would be promoted by the change."

There are two further sections which can have no bearing on this matter now before the court, one being in case of disqualification of the judge, and the other which perhaps has no reference to a criminal trial. This section concludes with this paragraph:

"In any criminal prosecution the court shall change the place of trial where it appears to the satisfaction of the court that the defendant will not be prejudiced thereby and that the United States will be put to unnecessary expense in such criminal prosecution if the transfer is not made."

Section 363 of the Compiled Laws of Alaska, at page 249, provides as follows:

"There is hereby established a district court for the district of Alaska, with the jurisdiction of Circuit and District Courts of the United States and with general jurisdiction in civil, criminal, equity, and admiralty causes; and four district judges shall be appointed for the district, each at an annual salary of seven thousand five hundred dollars, who shall during their terms of office reside in the divisions of the district to which they may be respectively assigned by the President. The court shall consist of four divisions, which shall also be recording divisions."

It will be noted there that the territory is not subdivided into divisions, but that it is the court that consists of four divisions, which are also recording divisions.

Further on in the Compiled Laws of Alaska, with reference to criminal procedure, in carrying out the idea of the court consisting of four divisions, and not the territory, we have section 2119, chapter 4, at page 700, with reference to criminal procedure:

"That grand juries, to inquire of the crimes designated in title XIV of this act, committed or triable within said district"—it does not say anything about divisions—"shall be selected and summoned, and their proceedings shall be conducted," etc.

Section 2122 says:

"That the grand jury have power, and it is their duty, to inquire into all crimes committed or triable within the jurisdiction of the court, and present them to the court."

It says nothing about divisions.

Section 2147, page 705, says:

"That the indictment must contain—

"First. The title of the action, specifying the name of the court to which the indictment is presented and the names of the parties."

Section 2148 prescribes a form for indictment, and says in the body of it: "A B is accused by the grand jury of the district of Alaska, division No. ———." Further on it says: "The said A B, on the ——— day of ———," and so on, "in the district aforesaid." It does not make any difference where the crime is committed, what division it was committed in, this court, or any other district court in the district, has authority to try it. Sections 2158 and 2185 carry out the same idea, that there is only one district, so far as judicial procedure is concerned, in the territory of Alaska, although the court consists of four divisions.

This is made, in view of the provision of article 6 of the Amendments to the Constitution, which reads as follows:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law."

And this judicial district, which comprises all of the territory of Alaska, has been constituted and ascertained by law since the year 1884, and there has never been any other.

Now, as regards the contention of the defendant that the case should not be moved to any other district at the request of the prosecution, I will cite Bishop on Criminal Procedure in that regard (4th Ed. § 72):

"Sec. 72. a. In England, under the common law, the indictment is first removed by certiorari into the Court of Queen's Bench, one of the ordinary causes for the removal being the necessity for a change in the place of trial. Thereupon, by leave of court, a suggestion is entered of record, and the cause sent down for trial to the new county. But—

"Sec. 73. 1. With us, the removal of causes in this way is little practiced. Consequently the course will ordinarily depend on the terms of the particular statute, illumined in the construction by the common law.

"2. Which Party Apply.—In England, the applicant may be either the prosecutor or the defendant. Commonly, with us, he is the defendant. Yet, in a part of our states, the change may be ordered equally on prayer of the government; in others, not."

Section 75, the last section, says:

"Where the state is the party seeking the change, and has shown its necessity as to one of several defendants, it was deemed by a single New York judge before whom the question arose, that the court should usually send all of them to the new county, though all are entitled to separate trials."

Following on, in section 75a, "On Prayer of State," it says:

"In those states whose Constitutions confer on the defendant the right to be tried in the county of the crime, plainly, as only his waiver can justify a change of the venue, there can be none on application from the prosecuting power. But where there is no such constitutional impediment, the English rule, permitting the prosecutor as well as defendant to be the applicant, may well prevail also with us."

Our statute is silent from beginning to end as to where the place of trial shall be, other than by inference from the sections which I have referred to from the Compiled Laws of Alaska. The Constitution of the United States, which is the only Constitution which we have to consider here, this not being a state, makes no provision whatever for the place of trial, other than what I have just read. Consequently, in my judgment, no constitutional right of the defendant can be violated by a change of venue.

In 12 Cyc. at page 242, subsection B, I find the following:

"Some cases hold that under a constitutional provision securing to the accused a trial by jury in the county or district in which the crime was committed the trial cannot be transferred to another county on motion of the district attorney over the objection or without the consent of the accused. Where, however, the Constitution contains no express provision as to the place of trial of an offender the court may order a change of venue on application of the prosecution, where it appears that a fair trial cannot be had in the county where the accused is indicted."

There is no county in the territory of Alaska, never has been any such organization, and the only organization that there is are the recording divisions which the various courts are authorized to establish.

Referring once more to the showing of the respective parties, I again state that the facts contained in the affidavits of the government are not denied by the defendant. The affidavits of the defendant merely state that, while they have heard the case discussed during the previous trial, which the government never alleged, still that in the opinion of affiant it is

possible to secure a fair and impartial jury for the trial of this case in this division, or in the immediate surrounding country.

Now, if the court had any power to go out into the surrounding country, or to the immediate surrounding country, there might be something in the contention of the defendant. But the law circumscribes the power of the court in that regard under the statute, and, as is well known to the attorneys practicing at the bar here, when a trial is one commenced and the regular panel exhausted, the court has no power to go outside of the town of Fairbanks, or the voting precincts in the town of Fairbanks. The court is required to reject the names of persons whose presence at the trial as jurors would occasion unreasonable delay and unnecessary expense, by the terms of the statute. So that, since the passage of this act, for two years, every time a trial is conducted here, and the regular panel of jurors is exhausted, the court is required to reject the names of everybody who might be qualified as jurors by reason of the fact that they have not heard of the case, and have never heard it discussed, and do not know anything about it personally, and is required to summon only those people who live here in the immediate community and who can attend, when subpœnaed as their names are drawn from the box, within a period of two hours, or two hours and a half, or overnight. That is the burden of the testimony of the two attorneys who testified, on behalf of the government, that under the present system of drawing juries no fair and impartial trial can be had with reference to this case, and that is not denied, and it comports exactly with the ideas of the court on the question.

If the court were to determine this matter merely upon the number of witnesses or affiants whom the respective parties have called, which, of course, the court is not, the government would have the benefit of the showing made.

Outside of the three persons who have testified, who are claimed by the defendant to be aliens, and who are admitted by the government to be aliens, the court knows each of the persons who have testified, and believes that they are interested in the enforcement of the law, that they are not prejudiced against the defendant or against the government, and that they are stating what they believe to be the truth in the matter, and that they have an honest appreciation of what ought to consti-

tute a fair and impartial jury and a fair and impartial trial in the trial of a criminal action.

But the defendant has called to his aid the affidavit of three persons who testified here on behalf of the defendant at the former trial, viz. Frank P. Wood, John H. Kelly, and George C. Moody, whose testimony, now before this court, the court is bound to disregard, and will do so.

The defendant also calls to his aid the testimony of Emil Pozza and J. S. Vance, who have been convicted of crime to the knowledge of this court. Their testimony is disregarded.

For similar, but not the same, reasons, the court disregards the testimony of W. W. Sherrard, whom the court knows is a close personal friend of long standing of the attorney for the defendant.

For the same, if not similar, reasons the court is bound to reject the testimony of W. H. Gilcher, Ruth Y. Barrack, Emma W. McKinnon, Thos. McKinnon, Cordelia Karshner, R. T. Chamberlin, H. L. Hedger, Chas. L. Thompson, Oscar Weber, E. M. Bockfinger, Thomas A. Watson, J. Marks, E. E. Drouin, J. H. Russell, Chas. McDermott, Robt. S. Donaldson, Frank Flynn, D. A. Newton, August Conradt, and Neil McDonald. In order to regard the testimony, and give any weight to it, of each and all of these persons, there would have to be something else incorporated in their affidavit. They would have to say, and convince the court, they are not interested in the result of this trial; they would have to say, and convince the court, that they are interested in seeing justice done in this particular case, irrespective of their personal friendship with the defendant or his attorney; they would also have to say, and convince the court, that they have no prejudice against the government in the prosecution of this particular case. None of the persons who testify in favor of the defendant say that such a jury as they describe in their affidavits, and so drawn as they describe, would try the case fairly and impartially as between the defendant, on the one hand, and the government, on the other; none of them say that the discussion of the case, which they admit having heard, might not affect the verdict of the jury that they describe in their affidavits, irrespective of the evidence; nor do they say that such a jury as they describe in their affidavits could or would have the ability to lay aside anything they may have heard or read about the case and try the case upon the

evidence alone. To warrant the court in giving them any consideration, those facts ought to be stated.

Now, it is further contended, in the reply affidavits filed by the defendant, and the last affidavits filed by him, that he has made a physical demonstration to the court that the court can secure for the trial of this case a fair and impartial jury, and he produces the affidavits of 17 persons who qualify in a way as jurors in the case, and who state the substance of such questions as are ordinarily asked of jurors in the trial of a case, and answer them well and correctly; but the court has no assurance, either from the affidavits or otherwise, that any of these persons mentioned, and who have signed these respective 17 affidavits, were voters at the last November general election in this territory, and that their names were so reported as voters to the clerk of the court, and that their names were in the jury box, or that they have not been discarded by the discretion which is given and the permission that is given to the clerk to reject 25 per cent. of the voters, and only place 75 per cent. in the jury box.

Now the court has had some experience in the trial of criminal actions as assistant United States attorney in this court for a number of years, and if these persons appeared here on a special venire, and the court was representing the office of the district attorney and the government in the trial of a case, as soon as Mr. John Howie was examined, and if he was passed by both sides for cause, the person who is now the judge of the court, if he were representing the district attorney's offce, would exercise a peremptory challenge. The same is true of W. P. Borden, assuming that he was passed for cause—that there was no prejudice or bias developed by the questions propounded to him. The same thing is true of John J. Murphy. Mr. Pat O'Connor, of Brooks, would never be drawn here, for the reasons that I have already referred to, because he lives at Brooks, and if he was in the town of Fairbanks, and his name was drawn out of the jury box, the court would be bound to reject it, because, even though the court had seen him the day before here, the court would not be justified in not rejecting his name, knowing his residence is at Brooks. Carl G. Carlson would probably qualify, and the court would accept him. Wm. B. Root would be challenged for cause, and probably would be disqualified, because he is conducting a cigar store, and talks with

everybody who comes in there, and numerous people come in there, and undoubtedly, if he was interrogated, he would say he had an opinion in the case, and he could not lay it aside, based upon what he has heard and read. James G. Moore would likewise probably disqualify himself for cause. Wm. J. Campbell would be challenged peremptorily. Frank Buteau would be permitted to remain. John F. Lake would be permitted to remain, so far as the government is concerned. J. L. Tobin would be challenged peremptorily. Basil Drakula, of Brooks, would be in the same position that Pat O'Connor is. John H. Miller, whom the court does not know, would probably stay. J. J. O'Connor would probably stay, and not be challenged either for cause or peremptorily; and so, also, Basil B. Beckman. Frank Petrok, of Goldstream, would never be drawn, for the reasons that apply to Pat O'Connor and Basil Drakula.

In that state of the case, the government, out of this 17, would have exercised 5 peremptories, 3 would have been challenged for cause in all probability, and the other 3 that I have mentioned, O'Connor, Drakula, and Petrok, would never have been drawn at all under the present system of drawing juries. So those 11 would be discarded at the option, undoubtedly, of the government, leaving, of the 17, 6 others, as to whom the defendant might exercise 6 of his peremptory challenges, and you would have nobody left. The court would then have to make another drawing and send out for more jurors.

Now it was called to the attention of the court here by the argument of defendant that the presiding judge of this court once before transferred a case for trial from this town to some other town in the district. That is within the knowledge of the court also. But the further statement of defendant's attorney, giving the reasons for such a change, are not within the knowledge of the court. The court has never consulted the record on the question, and has no knowledge of it, except as counsel states it. If it is true, as counsel has stated, it was moved arbitrarily and without any regard for the provisions of law; this court cannot be blamed for it, as it is now constituted, and it assumes no such responsibility. On the other hand, I reject that case as a parallel, or as a precedent in this case, which is entirely different, and has no similarity whatever to the case of United States v. Callahan. In that case there was no absent

witness concerning whom the government had used every diligence possible to obtain his or her attendance. At that time, also, there was no such jury law as we have here now.

And it would be appropriate for the court to state that, when this jury law was passed, the opponents of the measure in the Senate of the Legislature of Alaska referred to it as the "Bootleggers' Jury Law," because it required and limited the power of the court to the immediate community where the offense was committed to draw jurors. It prevents the courts, when they are drawing a jury—assuming, now, there are 150 men from outlying precincts in the town of Fairbanks, where court is held, 150 men who have never heard of the case that is on trial, who have never discussed it with anybody, who have never had any knowledge of the case, or knew that it was on the books, if they are in the town of Fairbanks at the time a jury is being impaneled and the regular panel exhausted, the court has no authority to demand the attendance of any one of those people, unless he happens to see them sitting here in the courtroom. The law forbids it.

If there is anything that is established in our law, it is that any man, no matter what he is charged with, should be tried with disinterested and unbiased jurors, no matter how guilty he may be or how innocent he may be.

On the showing made by the government, and on the law, and the court being of the opinion, and now finding, that the state of public prejudice is so strong in this community that neither the government nor the defendant can obtain a fair trial in this case, and that such a thing is precluded beyond all possibility and probability, the court now orders this case transferred to Juneau, the capital, for trial. The court will set the time now for the parties to appear there as the 21st day of February, at 10 o'clock, and order that the clerk transmit all the papers, files, and records in the case to the clerk of that court immediately, and all government witnesses who are now subpœnaed and in attendance on this court should be there at that time. I expect the government to draw a proper order in the case, and submit it to the attorney for the defendant, before it is signed by the court.